OPINION BY
BOWES, J.:
¶ 1 The question presented on appeal is whether child support can be suspended based upon a temporary institutionalization of the child. We answer that inquiry in the negative and therefore reverse.
¶ 2 This action concerns the support obligation of J.S.,[1] Appellee (“Father”), for his minor son, J.E.S. (“James”), who was born on September 12, 1994. On March 14, 1997, an order was entered providing that Father was required to pay support for James in the amount of fifty dollars per month. At that time, James was in the sole custody of his mother, R.C. (“Mother”). On September 7, 2006, Father petitioned to have his child support obligation suspended because James had been admitted to a mental health facility. The matter proceeded to a hearing officer, and at the February 7, 2007 hearing, the following evidence was adduced.
*761 ¶ 3 As of February 7, 2007, James had been institutionalized beginning in December 2006 at a mental healtb/mental retardation facility based on a diagnosis of As-perger’s Syndrome. That hospitalization was paid with social security/disability (“SSI”) benefits. Prior to that hospitalization, James had been in an in-patient facility for six months and had returned home briefly before the December 2006 placement.
¶4 At the February 7, 2007 hearing, Mother testified that James was scheduled to be released in April 2007 and that his institutionalization was “not permanent.” N.T. Hearing, 2/7/07, at 7. James returned to Mother’s home every other weekend from Friday evening to Sunday evening, and Mother also visited him at the facility every week. Mother stated that she continued to incur the following expenses on James’s behalf. First, she maintained the same household for both his periods of visitation and for his anticipated return. When Mother visited the child, she brought him gifts. Finally, Mother purchased all of James’s clothing. The record reveals the following:
Mr. Butler [Counsel for Mother]: The question is: Why should [child support] continue? Are you spending money on his behalf?
[Mother]: Yeah.
Mr. Butler: Are you maintaining a household for him to come back to on a regular basis?
[Mother]: Yes. Yes. I go to family counseling every week. I go visit him every week.
Mr. Butler: And you bring him things?
[Mother]: Yes. I bring him things. I take him out when he gets a day pass. I take him out. We go to the mall. He comes home. You know, he plays with his toys.
Mr. Butler: So the fact that you keep a home facility for him—
[Mother]: Yes, I do.
Mr. Butler: — it is an important part of his life?
[Mother]: Yes.
Id. at 5-6. Father presented no countervailing evidence.
¶ 5 Since the institutionalization was paid for by SSI, the hearing officer suspended Father’s obligation to provide any support for James effective September 7, 2006, and stated that Mother could file a petition to reinstate support if and when the child returned to her care. Mother’s exceptions were denied, and this appeal followed.
¶6 Initially, we set forth our standard of review:
“When evaluating a support order, this Court may only reverse the trial court’s determination where the order cannot be sustained on any valid ground.” Calabrese v. Calabrese, 452 Pa.Super. 497, 682 A.2d 393, 395 (Pa.Super.1996). We will not interfere with the broad discretion afforded the trial court absent an abuse of the discretion or insufficient evidence to sustain the support order. Id. An abuse of discretion is not merely an error of judgment; if, in reaching a conclusion, the court overrides or misapplies the law, or the judgment exercised is shown by the record to be either manifestly unreasonable or the product of partiality, prejudice, bias or ill will, discretion has been abused. Depp v. Holland, 431 Pa.Super. 209, 636 A.2d 204, 205-06 (Pa.Super.1994); See also Funk v. Funk, 376 Pa.Super. 76, 545 A.2d 326, 329 (Pa.Super.1988). In addition, we note that the duty to support one’s child is absolute, and the purpose of child support is to *762 promote the child’s best interests. Depp, 686 A.2d at 206.
Belcher v. Belcher, 887 A.2d 253, 256 (Pa.Super.2005) (quoting Samii v. Samii, 847 A.2d 691, 694 (Pa.Super.2004)).
¶ 7 In its opinion, the trial court rejected Mother’s challenge to the hearing officer’s recommendation for two reasons:
Based upon the facts elicited at the support modification hearing, it is clear that Mother does not qualify for standing to seek support, as she is not the person caring for child. Mother, at best, exercises some form of physical custody every other weekend. Thus, Mother is not entitled to seek or receive child support while child is not in her care.
Additionally, Mother is not incurring any expenses over and above the usual parental burden of purchasing clothing, gifts, and the like, due to child’s placement. Since Mother does not incur any expenses on behalf of or related to child, any order for support entered in this matter would not be for the benefit of child and would not, in any conceivable manner, promote child’s best interests.
Trial Court Opinion, 8/20/07, at 4-5.
¶ 8 We first address the trial court’s conclusion that Mother does not have standing to oppose a reduction in Father’s support obligation. In this respect, the trial court relied upon 28 Pa.C.S. § 4341(b), which provides, “Any person caring for a child shall have standing to commence or continue an action for support of that child regardless of whether a court order has been issued granting that person custody of the child,” as well. as Pa.R.C.P.1910.3, which states in pertinent part that a child support action “shall be brought ... (b) on behalf of a minor child by a person having custody of the child ... or (c) on behalf of a minor child by a person caring for the child regardless of whether a court order has been issued granting that person custody of the child.” Pa.R.C.P.1910.3(b) and (c). Finally, the court referenced Seder v. Seder, 841 A.2d 1074 (Pa.Super.2004), wherein this Court addressed the apparent discrepancy between section 4341(b) and Pa.R.C.P.1910.3. In Seder, this Court considered whether a father had standing to pursue child support where the trial court awarded him primary physical custody of his child but the mother kept the child in Jordan in defiance of the court’s order. We held that such a person, although not in physical custody of a child, could obtain child support.
¶ 9 The trial court herein concluded that since James was in a residential treatment facility, Mother was not “caring” for him, that he was not in her custody, and that Mother therefore had no standing to seek child support. Trial Court Opinion, 8/20/07, at 4. Finally, the court noted that the ruling in Seder did not compel a different result because unlike the father in Seder, Mother had not been awarded legal custody pursuant to an order of court.
f 10 We disagree with the trial court’s analysis both legally and factually. Section 4341(b) and Rule 1910.3 govern the “commencement” of an action for support and the- individuals who may properly make a claim for child support, respectively. At the time she commenced this action, Mother had sole physical custody of James and was caring for him. Thus, she had standing to “commence” this action and request child support.
¶ 11 The issue before us is whether Mother had the right to contest a reduction in that support obligation. Nothing in any of the referenced legal authority implies that she does not. Standing is conferred upon a person who is a party to an action and is aggrieved by the decision *763 entered in the action. See generally Citizens Against Gambling Subsidies, Inc. v. Pennsylvania, 591 Pa. 312, 916 A.2d 624 (2007). Mother is a party to this action, which, as noted, she was permitted to commence, and she certainly is aggrieved by the order in question because it absolves Father from paying her money which he otherwise would owe her. Thus, she has standing to contest the validity of the hearing officer’s decision to terminate Father’s support obligation.
¶ 12 We further disagree with the trial court’s factual conclusion that Mother is not caring for James. She visits him each week and participates in his treatment. In turn, James returns home biweekly, and Mother takes him on trips. Mother performs all of the parental responsibilities attendant with a child receiving in-patient mental health care. Accordingly, we conclude that the trial court improperly opined that Mother is not caring for this child.
¶ 13 We now address the trial court’s conclusion that child support was properly suspended based upon the child’s temporary in-patient treatment in a mental health facility. This case is one of first impression, and the issue before this Court is whether the best interests of children are served by suspension of child support orders during periods of transitory in-patient treatment outside the home. Neither the letter nor the spirit of the law permits a parent to avoid a child support obligation under such circumstances.
¶ 14 At this juncture, we must repeat that the “duty to support one’s child is absolute, and the purpose of child support is to promote the child’s best interests.” McClain v. McClain, 872 A.2d 856, 860 (Pa.Super.2005). “The principal goal in child support matters is to serve the best interests of the child through provision of reasonable expenses.” Yerkes v. Yerkes, 573 Pa. 294, 824 A.2d 1169, 1171 (2003). “The duty of child support, ‘as every other duty encompassed in the role of parenthood, is the equal responsibility of both mother and father.’ ” Id. (quoting Conway v. Dana, 456 Pa. 536, 318 A.2d 324, 326 (1974)). That duty is absolute. Id.
¶ 15 Our review of the record compels the conclusion that Mother continues to expend both time and money on behalf of the parties’ minor child. She cares for James through regular, weekly visits to the treatment facility, incurring transportation costs in the process. She maintains her household in the same condition as it was when he was solely in her physical custody. She does so for his periods of visitation on alternating weekends and in anticipation of his eventual return to her. She continues to purchase his clothing and toys. It is beyond question that James has benefited from these activities and that they are a financial burden to Mother. Under the circumstances, an abrogation of the child support obligation of Father is simply unwarranted.
¶ 16 We also observe that it is well established that a child support order can be modified only upon a substantial change in circumstances. McClain v. McClain, supra; 23 Pa.C.S. § 4352(a). Modification of child support arrangements has been limited to situations where there has been a change in circumstances that was either irreversible or indefinite. See generally Joann Ross Wilder, Pennsylvania Family Law Practice and Procedure (2005) § 5:20. Typical examples include significant alterations in a parent’s income, a change in household expenses, or modification of custodial arrangements of the children. Id. Thus, it is difficult to characterize an impermanent change in living arrangements as a substantial “change in circumstances” permitting modification proceedings in the first instance.
*764 ¶ 17 Blurring the line between temporary and permanent changes in circumstances clearly impacts a responsible custodial parent’s ability to provide for the child’s best interests. If a child is removed from a parent’s physical custody indefinitely, the parent does not need to maintain a household suitable for visits, and he can change his living arrangements and thereby reduce expenses. However, when a child is receiving provisional inpatient treatment, the custodial parent’s child-related expenses, as a practical matter, are not altered significantly. The custodial parent still must maintain an appropriate residence in anticipation of the child’s eventual return.
¶ 18 We find guidance in the rulings of other courts on this issue. In Conley v. Conley, 234 A.D.2d 910, 651 N.Y.S.2d 802 (N.Y.A.D.1996), the New York Supreme Court affirmed a trial court’s decision to deny termination of a child support order after the child was placed in a juvenile detention center. Therein, the court rejected the argument that the child’s mother was not eligible to receive child support because she was no longer the custodial parent. In doing so, the court emphasized the temporary nature of the child’s placement because the treatment goal at the facility was to reunite the child with the mother. The court further noted that the mother had “not abdicated her parental role or responsibilities.” Id. at 910, 651 N.Y.S.2d 802. The court found the following evidence particularly relevant:
[A]t the time of the hearing, the child was spending some weekends at home with [the mother]. She is responsible for his transportation, to and from the facility for visits and for all of his expenses during the visits. She also makes additional trips to the facility to visit thd child and take him out to lunch or shopping. She provides him with spending money and various personal items, including a winter jacket. Petitioner continues to bear costs associated with the care of the child despite her temporary loss of custody and respondent should contribute to those costs.
Id.; see also Van Winkle v. Van Winkle, 107 Ill.App.3d 73, 62 Ill.Dec. 831, 437 N.E.2d 358 (1982) (trial court properly refused to suspend father’s child support obligation even though child had been placed in detention facility after being adjudicated delinquent).
¶ 19 The present case is analogous. Mother is continuing to act in a parental capacity and is providing love and support for James. The goal of treatment is to return James to her care. Mother incurs travel expenses, maintains the home, and provides clothing and toys.
¶ 20 Herein, the trial court disregarded unrebutted evidence of Mother’s continued need for child support to offset direct and incidental expenses that she actually incurs based upon her role as the only nurturing parent to this child. The trial court’s decision would set dangerous precedent that runs the risk of being applied to any number of scenarios where a child is in transitory placement outside the custodial parent’s home. For example, if a child is hospitalized for extended medical treatment, we clearly envision application of this reasoning so as to deny the custodial parent support during the period of hospitalization. To permit suspension of support based upon temporary institutionalization invites a plethora of petty legal challenges that would impose a significant burden on our judicial resources. Hence, the order in question must be reversed.
¶21 Order reversed. Case remanded. Jurisdiction relinquished.

. We have redacted the parties' names to protect the identity of the child.